UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
RICARDO RODRIGUEZ,

      Petitioner,

  - against -                                    <u>MEMORANDUM AND ORDER</u>
                                                    05-CV-1639 (RRM)

DENNIS BRESLIN, Superintendent,
Arthur Kill Correctional Facility,

      Respondent.
----------------------------------------------------------X
MAUSKOPF, United States District Judge.

On November 29, 2001, Ricardo Rodriguez ("Petitioner") was sentenced in the Supreme Court of the State of New York, Queens County, to an aggregate term of eight (8) years in prison, following his conviction by a jury of attempted first degree robbery, attempted second degree robbery, and second degree criminal possession of a weapon.

Petitioner's timely <u>pro</u> <u>se</u> petition for a writ of habeas corpus under 28 U.S.C. § 2254 is now before the Court, together with the State's papers in opposition and Petitioner's traverse. Petitioner raises three claims: (1) that his pre-trial counsel was ineffective for filing a deficient motion to controvert an eavesdropping warrant; (2) that his trial counsel was ineffective for failing to challenge a biased juror; and (3) that the evidence presented at trial was insufficient to support a conviction.

For the reasons stated below, Petitioner's application for habeas relief is DENIED and the petition is DISMISSED.

## FACTUAL BACKGROUND[1]

### A. Police Investigation of Luis Morales

The police investigation that let to Petitioner's arrest and ultimate conviction stemmed from a separate, preexisting New York City Police Department ("NYPD") investigation into certain narcotics-related activity. During the course of that investigation, on March 24, 1998, NYPD detectives obtained an eavesdropping warrant pursuant to New York Criminal Procedure Law § 710.30. That warrant authorized the interception of electronic and telephonic conversations involving Luis Morales ("Morales"), one of the targets of the investigation, where such conversations involved narcotics-related activity. See Eavesdropping Warrant at 2 (Respondent's Ex. G). The warrant applied to Morales as well as his "co-conspirators, accomplices, agents, suppliers, deliverers, associates, and customers." Id.

### B. Recorded Conversation Between Petitioner and Morales

On April 4, 1998, Luis Morales called Petitioner and the two discussed Petitioner's suspension from his job at Ozone Park Lumber ("Ozone"). See Transcript of Recording at 10-11 (Respondent's Ex. G). Petitioner expressed resentment toward various people at Ozone, and told Morales that, the following week, people were going to "get the[ir] feelings hurt." Id. at 14-15. Petitioner then mentioned the "EAB" by 133 Street and Rockaway Boulevard, and indicated that he and someone named "Jose" had gone to the branch to see who went there to "pick up stuff." Id. Petitioner informed Morales that "Vinnie" goes down to the customer parking lot by himself. Id.; see also Transcript of Proceedings ("Tr.") at 205, 218-19. Detective Holmes Canobas

---

[1] The facts set forth herein are derived from (1) the transcript of trial proceedings and (2) the eavesdropping warrant (with supporting papers) and decision on the motion to controvert, filed as exhibits to Respondent's Opposition.

("Canobas") intercepted this call under the court-authorized wiretap of Morales's cell phone. Tr. 197-98.[2]

C. **Police Surveillance and Petitioner's Arrest**

Based on the conversation between Petitioner and Morales, Sergeant Kevin O'Neill ("O'Neill") and other NYPD officers set up a surveillance team outside of the European American Bank ("EAB") on 133rd St and Rockaway Boulevard in Queens on the morning of April 10, 1998. Tr. at 220. The following events were observed by various members of that team, a number of whom testified at Petitioner's trial.

Shortly after 2 p.m., a gold Ford Taurus driven by Petitioner approached the vicinity. Tr. at 223-24. Jose Gonzales ("Gonzales") was in the passenger seat, and Frankie Nieves ("Nieves") was in the back seat. Tr. at 224. Petitioner parked the Taurus on 134th Street and Nieves exited the car. Tr. at 224. Nieves approached a black Cadillac parked on the opposite side of the street, opened the front passenger door, and placed a handgun under the car seat. Nieves then got back into the Taurus, at which point Petitioner drove down 134th Street and turned left on Rockaway Boulevard. Tr. at 233. Petitioner then proceeded to make a series of turns, which the officers recognized as "squaring the blocks," a technique used to detect pursuit. Tr. at 233-34, 388.

Ten minutes later, Petitioner again parked the Taurus on 134th Street. Petitioner exited the car, popped the hood, and appeared to be checking his fluid levels while simultaneously observing the parking lot of the bank. Tr. at 237. Petitioner subsequently got back into the Taurus and continued to "square the blocks." Tr. at 239-40.

---

[2] As discussed more fully in Section F(2), infra, the evidence presented at trial demonstrated that the individual referred to as "Vinnie" was Vincent Russo ("Russo"), Petitioner's supervisor at the lumberyard where both men worked. At trial, Russo testified that he frequently went to the European American Bank ("EAB") on 133rd Street and Rockaway Boulevard in Queens to cash employee paychecks, a fact that was well known to his employees.

3

Vincent Russo ("Russo"), accompanied by his two year-old son, arrived at the EAB between 2:30 and 2:45 p.m. Tr. at 330, 336. At approximately 2:40 p.m., Gonzales and Nieves exited the Taurus and entered the black Cadillac in which Nieves had previously placed a gun. Tr. at 240-41. Petitioner remained parked nearby on Rockaway Boulevard. O'Neill testified that Petitioner could view the EAB parking lot from his location. Tr. at 275, 277. When Russo attempted to drive out of the EAB parking lot, Gonzales backed up the Cadillac and blocked his exit. Tr. at 243-45, 338-39, 412. Nieves got out of the Cadillac and approached Russo's car. Tr. at 246, 339, 412. Nieves then pulled a handgun from his waistband, pointed it into the driver's side window, and demanded that Russo "give [him] the bag." Tr. at 246, 339, 413.

Once he observed Nieves remove the gun from his waistband, O'Neill ordered the police team to move in. Tr. at 246, 362. Nieves and Petitioner were arrested at the scene, but Gonzales drove off in the Cadillac when the surveillance team approached. Tr. at 246-48. Gonzalez was arrested later that day as a result of information provided by Nieves. Tr. at 385-86, 422.

**D.   Retroactive Amendment to the Eavesdropping Warrant**

On April 16, 1998, after the attempted robbery, the prosecution made an application to amend the eavesdropping warrant pursuant to New York Criminal Procedure Law § 700.65(4), alleging that the conversation between Morales and Rodriguez constituted evidence of, inter alia, conspiracy to commit robbery and criminal possession of a weapon. See Application for a Retroactive Amendment to an Eavesdropping Warrant at 2 (Respondent's Ex. G). Attached to the application was an affidavit by Detective John Cuddy ("Cuddy"), recounting the conversation between Petitioner and Morales. See Affidavit in Support of Retroactive Amendment to Eavesdropping Warrant (Respondent's Ex. G) ("Cuddy Affidavit"). That motion was granted.

4

## E. Motion to Controvert the Search Warrant

On July 16, 1999, Petitioner filed a motion to controvert the eavesdropping warrant pursuant to New York Criminal Procedure Law § 710.20. Petitioner's pre-trial counsel, Joseph E. Justiz, requested that evidence be suppressed on the grounds that, inter alia, the police violated the Petitioner's rights by (i) failing to minimize their interception of non-pertinent conversation, and (ii) including false information in their applications for the warrant and amendment thereto. See Motion to Controvert; Affirmation in Support of Motion to Controvert (Respondent's Ex. G).

On September 30, 1999, Justice John Latella of the Supreme Court of the State of New York denied Petitioner's motion to controvert the warrant without a hearing. See People v. Rodriguez, Ind. No. 1938/98 (N.Y. Sup. Ct. Sept. 30, 1999) (decision and order on motion to controvert eavesdropping warrant). The court found that Petitioner had failed to show that any of the affidavits submitted in support of the warrant contained false statements or misstatements made with reckless disregard for the truth, or that the police failed to minimize the recording of calls made pursuant to the original warrant. Id. at 2-5.

## F. Trial

### 1. Voir Dire

One of Petitioner's three claims in the present habeas petition involves his trial counsel's failure to challenge a prospective juror. During jury selection, prospective juror Gloria Federici ("Federici") indicated that her judgment might be affected because the case involved a gun pointed at a child. Federici stated that because of her "work with children" and the fact that she had nieces and nephews, she would be "sensitive" to the issue. Tr. at 138. When trial counsel

Dennis Coppin ("Coppin") asked Federici whether she could be "fair" and "impartial" in the case, Federici responded, "I will try to listen to the facts." Counsel then asked, "And judge the case, judge it unemotionally?" The trial record does not indicate Federici's response. Id.

Later in the proceedings, Coppin presented an example of acting in concert. In Coppin's hypothetical scenario, two friends discuss a plan to attend a baseball game and agree that they will bring batteries to throw at the players on the field. A third person accompanies his friends, knowing their plans. Coppin asked the jurors whether "the guy [] going to the game with these friends who are going to throw batteries on the field, do you think he is guilty of acting in concert?" Tr. 144-45. Another prospective juror, Eduardo Lopez ("Lopez"), at first stated that he would not feel comfortable sitting next to someone who was planning to throw a battery, but when prompted, stated that he could not find anyone guilty without listening to the facts. Tr. 147-48. Counsel stated, "[a]bsolutely...[t]he case has to be proven beyond a reasonable doubt." When Coppin asked Federici whether she agreed with Lopez's statement, Federici responded, "I would say he was guilty of poor judgment." Id.

Although Petitioner's counsel exercised a peremptory challenge to exclude Lopez, neither party challenged Federici, and she was seated on the jury. Tr. 151. Overall, Coppin made no challenges for cause and used eight peremptory challenges. Tr. 85-86, 151.

### 2. The Prosecution's Case

In addition to the taped conversation between Petitioner and Morales and police testimony regarding their observation of the attempted robbery, the following additional information was presented at trial:

6

In April 1998, Petitioner worked at Ozone. Tr. 306, 308, 334. Russo also worked for Ozone as an equipment manager. Tr. 330. Ozone used the EAB, located at 133rd Street and Rockaway Boulevard in Queens, for its payroll account. Tr. 331-32. Russo and operations manager Rene Araoz ("Araoz") testified that each Friday afternoon between 2 and 3 p.m., Russo would go to the EAB to cash employee paychecks. Tr. 322, 331-32. Russo and Araoz also stated that most employees were aware of this system. Id.

On April 2, 1998, Petitioner and fellow employee Mike Pilpo ("Pilpo") were caught drinking beer during business hours. Tr. 305-07. Araoz sent both employees home and told them not to report to work the next day. Tr. 306-07. Both Petitioner and Pilpo returned to work on the following Monday. Tr. 308.

Nieves testified that on April 8, 1998, Petitioner and Gonzales went to Nieves's home to plan the robbery. Tr. 399. They planned to steal the payroll of approximately $30,000 and split it among Petitioner, Nieves, Gonzales, and an unknown fourth person. Tr. 400-01. At the meetings, Nieves displayed his gun to Gonzales and Petitioner, both of whom also handled the gun. Tr. 401-02. Nieves testified that Petitioner was "there with [him]" for the planning and commission of the robbery. Tr. 413.

### 3. Verdict and Sentencing

At the conclusion of trial on October 22, 2001, a unanimous jury found Petitioner guilty of attempted first degree robbery, attempted second degree robbery, and second degree criminal possession of a weapon, all of the counts with which he was originally charged. Tr. 629-30. On November 29, 2001, the Supreme Court of the State of New York, Queens County, Criminal Term (the "trial court") sentenced Petitioner to eight (8) years in prison.

# PROCEDURAL HISTORY

## A. Direct Appeal

On direct appeal to the Supreme Court of the State of New York, Appellate Division, Second Department (the "Appellate Division"), Petitioner, through counsel, argued that his guilt had not been proven beyond a reasonable doubt and that the verdict was against the weight of the evidence. See Brief for Defendant-Appellant dated March 10, 2003 at 16-22 (Respondent's Ex. A). Specifically, Petitioner claimed that the People failed to prove that he acted in concert with his co-defendants. Id.

In an opinion dated October 14, 2003, the Appellate Division affirmed the judgment. People v. Rodriguez, 209 A.D.2d 821 (2d Dept. 2003). The court held that the evidence was legally sufficient to establish Petitioner's guilt beyond a reasonable doubt.

By letter dated November 5, 2003, Petitioner applied to the New York State Court of Appeals for leave to appeal from the Appellate Division's decision. See Defendant's Criminal Leave Application (Respondent's Ex. D). On December 31, 2003, the Court of Appeals denied Petitioner's leave application. People v. Rodriguez, 1 N.Y.3d 579 (2003).

## B. Habeas Petition Filed and Stayed

Petitioner filed a pro se petition for a writ of habeas corpus on March 23, 2005, claiming:

(1) his guilt had not been established by a reasonable doubt; and

(2) he received ineffective assistance of counsel, on the grounds that:

> (a) pre-trial counsel failed to submit sufficient facts in support of his motion to controvert the eavesdropping warrant; and

> (b) trial counsel failed to challenge a prospective juror who had expressed potential bias during voir dire.

8

Our predecessor court (Amon, J.) initially found Petitioner's ineffective assistance of counsel claims to be unexhausted, as those claims had not been addressed on direct appeal and Petitioner's § 440.10 was still pending in state court. See Order dated Apr. 14, 2005 (Docket No. 3). In June 2005, Judge Amon stayed the action until Petitioner's state court claims had been exhausted. See Order dated Jun. 1, 2005 (Docket No. 5).

### C. Motion to Vacate the Judgment (§ 440.10 motion)

On April 13, 2005, Petitioner filed a pro se motion to vacate the judgment of conviction pursuant to New York Criminal Procedure Law § 440.10. In this motion, Petitioner argued that he received ineffective assistance of counsel on the grounds that:

> (1) pre-trial counsel was ineffective because he failed to submit sufficient facts in support of a motion to controvert; and

> (2) trial counsel failed to challenge a juror who expressed a bias during jury selection.

See Defendant's Affidavit in Support of Motion to Vacate Judgment of Conviction Pursuant to CPL § 440.10 (Respondent's Ex. G) ("440.10 Affidavit") at 1; Defendant's Memorandum of Law in Support of CPL § 440.10 Motion (Respondent's Ex. G) at 21.

In opposing Petitioner's motion, the State argued that Petitioner's claims were procedurally defaulted under New York Criminal Procedure Law § 440.10(2)(c), which mandates that a § 440.10 motion be denied where, although sufficient facts appeared on the record to permit review of the movant's claims on direct appeal, the movant unjustifiably failed to raise such claims on direct appeal. See N.Y. Crim. Proc. L. § 440.10(2)(c); Affirmation in Opposition to Defendant's Motion to Vacate Judgment of Conviction Pursuant to C.P.L. 440.10

9

(Respondent's Ex. H) at 5-6. The State did not address the merits of Petitioner's claims, because it considered his claims to be procedurally barred. Id.

On September 8, 2005, the trial court denied Petitioner's motion. See People v. Rodriguez, Ind. No. 1938/98 (N.Y. Sup. Ct. Sept. 8, 2005) (order denying § 440.10 motion) (Respondent's Ex. J). The court did not address the State's assertion that Petitioner's claims were procedurally barred, instead denying Petitioner's claims on the merits and holding that Petitioner had received legal representation that was "far more than just adequate." Id.

In January 2007, Petitioner moved pro se for leave to appeal from the denial of his § 440.10 motion to the Appellate Division. See Rodriguez Affidavit dated January 5, 2007 (Respondent's Ex. K). The State again opposed Petitioner's motion on the dual grounds that Petitioner's claims were procedurally defaulted under New York Criminal Procedure Law § 440.10(2)(c) and, in any event, meritless. See Affirmation in Opposition at 5 (Respondent's Ex. L). On March 21, 2007, the Appellate Division denied Petitioner's leave application. People v. Rodriguez, Ind. No. 1938/98 (2d Dept Mar. 21, 2007) (Respondent's Ex. M).

## D. Habeas Petition Reopened

After exhausting his claims in state court, Petitioner requested that his case be reopened. See Defendant's Letter dated April 7, 2007 (Docket No. 6). On April 24, 2007, Judge Amon reopened Petitioner's case. See Order dated Apr. 25, 2007 (Docket No. 7). This case was reassigned to the undersigned on December 5, 2007.

## APPLICABLE LAW

As to any claim adjudicated on the merits by a state court, habeas corpus relief is only available where the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States . . . ." 28 U.S.C. § 2254(d)(1). With respect to the "contrary to" clause, the writ may issue if the state court decision is contrary to Supreme Court precedent on a question of law or if the state court decision addresses a set of facts "materially indistinguishable" from a relevant Supreme Court case and arrives at a result different than that reached by the Court. Williams v. Taylor, 529 U.S. 362, 405 (2000).

A state court decision involves an "unreasonable application" of Supreme Court precedent where the state court either "identifies the correct governing legal rule" from the Supreme Court's cases and "unreasonably applies it to the facts" of the case, or "unreasonably extends a legal principle from [the Court's] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Id. at 407. "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous;" the decision must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75 (2003).

A petitioner can also obtain relief by showing that the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). However, federal courts are required to presume the correctness of state courts' factual findings unless petitioners rebut the presumption with "clear

11

and convincing evidence." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); 28 U.S.C. § 2254(e)(1).

A.  **Ineffective Assistance of Counsel**

To prevail on a Sixth Amendment ineffective assistance of counsel claim, both Petitioner and the State acknowledge that Petitioner must show that:

(1) counsel's representation "fell below an objective standard of reasonableness" measured under "prevailing professional norms;" and

(2) "there is reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."

Strickland v. Washington, 466 U.S. 668, 688, 694 (1984).

A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." Id. at 694. The performance and prejudice prongs of Strickland may be addressed in either order, and "[if] it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice. . .that course should be followed." Id. at 697. Moreover, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Indeed, strategic choices made after thorough investigation of law and facts are "virtually unchallengeable." Strickland, 466 U.S. at 690-91.

B.  **Legal Insufficiency**

Insofar as Petitioner claims that his guilt was not proven beyond a reasonable doubt, both Petitioner and Respondent agree that the relevant question for this Court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Petitioner "bears a very heavy burden" when challenging the

legal sufficiency of the evidence in a state criminal conviction. Einaugler v. Supreme Court, 109 F.3d 836, 840 (2d Cir. 1997). The state is entitled to have every permissible inference drawn in its favor. Jackson, 443 U.S. at 326. The Court must presume that the jury resolved all questions of credibility in favor of the prosecution, Id.; Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981), and the State need not have refuted every possible hypothesis supporting Petitioner's innocence. Jackson, 443 U.S. at 326; Dixon v. Miller, 293 F.3d 74, 81 (2d Cir. 2002).

## DISCUSSION

A. **Motion to Controvert the Eavesdropping Warrant**

Petitioner's first claim arises from his contention that his pre-trial counsel provided ineffective assistance by filing a deficient motion to controvert the eavesdropping warrant. The crux of this argument is that Petitioner's pre-trial counsel failed to adequately present meritorious issues, namely, (i) NYPD investigators' failure to comply with statutory minimization requirements, and (ii) false and misleading statements in the detective's affidavit submitted in support of the retroactive amendment to the warrant.

None of Petitioner's arguments merits habeas relief. Petitioner can show neither that his counsel's performance was constitutionally defective nor that he was prejudiced by his counsel's performance. As such, the state court's rejection of Petitioner's ineffective assistance claim was neither contrary to, nor an unreasonable application of, Strickland and its progeny. See Kimmelman, 477 U.S. at 365; Strickland, 466 U.S. at 694.

Petitioner's inability to meet either prong of the Strickland test is evident from a review of the state court's decision on the motion to controvert the eavesdropping warrant. Petitioner's

pre-trial counsel made both of the primary arguments that Petitioner now cites as grounds for a Strickland claim. Petitioner's contention that his counsel failed to make those arguments effectively is belied by the state court's decision on the motion, in which the court made clear that it was fully aware of the grounds for Petitioner's motion to controvert, including both his false/misleading statements argument and his minimization argument. The court stated that it had reviewed both parties' moving papers, the eavesdropping warrant and application therefor, the retroactive amendment to that warrant and application therefor, and the transcript of the April 4, 1998 conversation between Petitioner and Morales. The court addressed both arguments in detail, and rejected them on the merits.

Given these facts, Petitioner can neither show that his counsel's performance was constitutionally defective nor that any alleged errors resulted in prejudice to him. Indeed, this was the basis for the state court's rejection of the ineffective assistance argument that Petitioner presented through his § 440.10 motion:

> It is apparent from the September 30, 199 decision denying defendant's motion to controvert the eavesdropping warrant [Latella, J.] that the Court fully considered both the April 4, 1998 warrant and its supporting papers and the retroactive amendment on April 16, 1998 and considered them both reasonable and proper.

People v. Rodriguez, Ind. No. 1938/98 (N.Y. Sup. Ct. Sept. 8, 2005) (memorandum opinion denying § 440.10 motion). Because Petitioner's claim fails to meet either prong of Strickland, the state court's rejection of his claim is neither contrary to, nor an unreasonable application of, clearly established Federal law. Compare Clarke v. Poole, 440 F. Supp. 2d 235, 242 (W.D.N.Y. 2006) (rejecting ineffective assistance claim where, although motion papers were "inartfully drafted," the state court considered the underlying argument for suppression); Boyd v. Hawk, 965

F. Supp. 443, 452 (S.D.N.Y. 1996) (rejecting ineffective assistance claim where, despite sloppy drafting, the motion submitted was not alleged to have "omitted any issues that should have been raised").

B. **Failure to Challenge Juror Gloria Federici**

Petitioner's second ineffective assistance claim, premised on his trial counsel's failure to challenge juror Gloria Federici, is likewise without merit. Petitioner has not shown that his counsel's decision not to challenge Federici was outside the "wide range of professionally competent assistance." Strickland, 466 U.S. at 690.

First, Federici's statement that she "would try" to decide the case based on the evidence presented was a sufficient assurance for both the trial judge and counsel to be satisfied of her impartiality. See United States v. Towne, 870 F.2d 880, 885 (2d Cir. 1989) (upholding denial of challenge for cause where, despite a juror's expression of reservation, the juror promised that she would try to decide the case based on the evidence presented); see also United States v. Ploof, 464 F.2d 116, 117-18 (2d Cir. 1972) (upholding denial of challenge for cause where juror indicated he would do his "best" to decide the case based on the evidence presented).

Second, Federici's opinion that the individual in defense counsel's hypothetical would be "guilty of poor judgment" (see discussion at page 6, supra) did not demonstrate bias such that counsel's failure to challenge her constituted ineffective assistance. Indeed, Federici's statement may have reasonably led counsel to believe that Federici would be sympathetic to the defense, which focused on attacking the "acting in concert" element of the offense. Given this defense strategy, it was perfectly reasonable for counsel to seek out jurors who might be sympathetic to his argument that, while Petitioner may have been "guilty of poor judgment," he lacked the

15

mental state necessary to find him guilty of acting in concert in the attempted robbery. Indeed, one plausible interpretation of Federici's comment regarding "poor judgment" is that she would be inclined to deem the individual in the hypothetical guilty of "poor judgment" rather than a criminal offense. Under these circumstances, defense counsel's decision not to challenge Federici certainly could be considered sound trial strategy. This conclusion is only strengthened by the fact that counsel exercised eight peremptory challenges during voir dire, suggesting that his decision to challenge other prospective jurors but not Federici was "part of a trial strategy that might be considered sound." Nova v. Ercole, No. 06-562, 2007 U.S. Dist. LEXIS 31968, at *23 (S.D.N.Y. Apr. 30, 2007) (citing Strickland, 466 U.S. at 690).

Finally, counsel's decision not to challenge Federici did not amount to ineffective assistance based on the fact that the trial transcript did not indicate Federici's response when Coppin asked her to confirm that she would judge the case unemotionally. As discussed above, Federici's responses, considered as a whole, and particularly her responses to counsel's hypothetical, were such that Coppin's decision to seat her was certainly within the wide range of professional competence.

Nor can Petitioner show that he was prejudiced by counsel's failure to challenge Federici. To fulfill the prejudice prong of Stickland, Petitioner must show that the juror was *actually* biased against him. See, e.g., Charlemagne v. Goord, No. 05-9890, 2008 U.S. Dist. LEXIS 61445, at *77-78 (S.D.N.Y. June 30, 2008) ("Where, as here, a petitioner asserts a claim of ineffective assistance based on trial counsel's failure to challenge a prospective juror during voir dire, petitioner must show that the prospective juror was actually biased against him or her.") (citing Murphy v. Florida, 421 U.S. 794, 800 (1975)). Because Petitioner has adduced no facts to

demonstrate that Federici was actually biased against him, his Strickland claim must fail on this ground as well. Id.; see also Nova, 2007 U.S. Dist. Lexis 31968, at *24.

Because Petitioner can neither show that his trial counsel was ineffective for failing to challenge Federici, nor that he was prejudiced thereby, the state court's rejection of this ground for his Strickland claim was neither contrary to, nor an unreasonable application of, clearly established federal law.

C.  **Legal Insufficiency Claim**

Petitioner's final claim – that the prosecution failed to prove his guilt beyond a reasonable doubt – is also unavailing. The Appellate Division's rejection of this legal insufficiency argument was neither contrary to, nor based on an unreasonable application of, clearly established federal law.

When considering sufficiency of the evidence for a state conviction, a federal court must look to state law to determine elements of the crime. Ponnapula v. Spitzer, 297 F.3d 172, 179 (2d Cir. 2002). Under New York law, a defendant is guilty of first-degree robbery where he "intentionally aided" co-defendants in their efforts to "forcibly steal[] property" and where, in the course of the commission of the crime, "he or another participant in the crime was armed with a deadly weapon." N.Y. Penal Law §§ 20.00, 160.15(2). A defendant is guilty of second-degree robbery where he "intentionally aided" co-defendants in their efforts to "forcibly steal property" while "aided by another person actually present." N.Y. Penal Law §§ 20.00, 160.10(1). To prove an attempt to commit a crime, the State must prove that the defendant, with "intent to commit a crime, engage[d] in conduct which tended to effect the commission of that crime." N.Y. Penal Law § 110.00. To show that a defendant "intentionally aided" his co-defendants, the

State must show that the defendant and his co-defendants had a community of purpose. People v. Allah, 71 N.Y.2d 830, 832 (1988). A defendant's intent can be established from the act itself or from his conduct and the surrounding circumstances. People v. Bracey, 41 N.Y.2d 296, 301 (1977); People v. Meija, 297 A.D.2d 755 (2d Dept. 2002).

The evidence presented at trial established all of the elements of attempted first-degree and second-degree robbery. Petitioner does not dispute that co-defendants Nieves and Gonzales blocked Russo's car from exiting the parking lot of the bank and that Nieves brandished a gun and demanded that Russo give him the bag of money. This evidence was sufficient to show that Nieves and Gonzales intended to forcibly steal property from Russo while Nieves was armed with a deadly weapon and aided by another person actually present. See, e.g., Cassie v. Graham, No. 06-5536, 2007 U.S. Dist. LEXIS 6770, at *75. (S.D.N.Y. Jan. 31, 2007). The only remaining question, therefore, is whether there was sufficient evidence for the jury to conclude that Petitioner "intentionally aided" Nieves and Gonzales.

The recording of the conversation between Petitioner and Morales, combined with the testimony of Nieves and the police officers present at the scene of the robbery, were sufficient evidence to allow the jury to find that the Petitioner participated in the planning and execution of the crime and, therefore, "intentionally aided" his co-defendants.

Viewed in the light most favorable to the prosecution, the transcript of the conversation between Petitioner and Morales indicates that Petitioner communicated the specific time, date, and location of the robbery, and identified Russo as the intended victim. Further, Nieves testified that Petitioner participated in the planning of the robbery, including handling the gun that Nieves was planning to use. Compare Hughes v. Phillips, 457 F. Supp. 2d 343, 370 (S.D.N.Y. 2006)

(holding that testimony of accomplice regarding petitioner's participation in planning and commission of the crime was sufficient under Jackson). NYPD detectives testified that they observed Petitioner drive Nieves and Gonzales to the EAB, engage in what they recognized as counter-surveillance tactics, and remain in the vicinity, watching the EAB parking lot, while the attempted robbery was in progress.

Moreover, Petitioner was the only defendant who worked for Ozone, a fact that – combined with the conversation in which Petitioner told Morales about "Vinnie," who went to the "EAB" to "pick up stuff" – certainly supported the prosecution's theory that Petitioner acted as the "inside man" in the defendants' robbery scheme. The evidence regarding Petitioner's workplace difficulties, including his conversation with Morales, also demonstrated that Petitioner had a motive for the crime, of which Russo and Ozone were the intended victims.

Defendant's participation in the planning of the crime and role as a look-out during its commission were sufficient to establish that Petitioner "intentionally aided" his co-defendants. See People v. Carre-El, 287 A.D.2d 731 (2d Dep't 2002); People v. Arias, 270 A.D.2d 354 (2d Dep't 2000); People v. Wooten, 214 A.D.2d 596 (2d Dep't 1996). See also Hilliard v. New York, No. 86-0251, 1986 U.S. Dist. LEXIS 16295, at *9 (S.D.N.Y. Dec. 18, 1986).

Because the evidence presented at trial was sufficient to find Petitioner guilty of the crimes of which he was convicted, the state court's rejection of Petitioner's legal insufficiency argument was neither contrary to, nor based on an unreasonable application of, Jackson or any other clearly established federal law. As such, Petitioner is not entitled to habeas relief on this claim.

## **CONCLUSION**

For the reasons set forth above, Petitioner's application for habeas corpus relief is DENIED and the petition is DISMISSED. As Petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. See 28 U.S.C. § 2253.

SO ORDERED.

Dated: Brooklyn, New York
       February 19, 2009

ROSLYNN R. MAUSKOPF
United States District Judge